GEORGE DIAMOND
1900 W. Carla Vista Dr.
PO Box 6602
Chandler, AZ 85246-4026
(480) 857-0025
Dikasterio@Yahoo.com
Plaintiff in Pro Se

☑ FILED     ____ LODGED
____ RECEIVED ____ COPY

JAN 27 2015

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| George Diamond<br><br>          Plaintiff,<br><br>      vs.<br><br>Wells Fargo Bank, NA;<br>CitiMortgage, Inc.;<br>Mortgage Electronic Registration Systems, Inc.;<br>First American Financial Corporation;<br>All persons unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in the complaint adverse to the Plaintiff's title, or any cloud on Plaintiff's title thereto, and does 1-100 inclusive<br><br>          Defendants. | CASE: CV-14-00975-PHX-SPL<br>ORIGINAL<br>U.S. District Judge:<br>      Hon. Steven P. Logan<br><br>**PLAINTIFF'S ANSWER TO DEFENDANT FIRST AMERICAN FINANCIAL CORP. ( FAFC ) MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

**PLAINTIFF'S ANSWER TO DEFENDANT FIRST AMERICAN FINANCIAL CORP.**

**( FAFC ) MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

The PLAINTIFF, George Diamond, answers the MOTION TO DISMISS PLAINTIFF'S

AMENDED CLAIM submitted by Defendant First American Financial Corp. ( "FAFC" ) and

1

states:

I.   Denied. ( Background )

II.  Denied. ( Slander of Title )

III. Denied. ( Intentional Infliction of Emotional Distress )

IV.  Denied. ( Quiet Title ).

WHEREFORE Plaintiff demands that the MOTION TO DISMISS AMENDED CLAIM submitted by Defendant FAFC be DENIED by this Honorable Court.

### PLAINTIFF'S ANSWER TO DEFENDANT FIRST AMERICAN FINANCIAL CORP. ( FAFC ) MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

1.   Pursuant to Rule 12(b)(6) FRCP, the Plaintiff has indeed already submitted the evidence executed by the Certified Fraud Examiner securitization audits to this Honorable Court and to all Defendants stating the Plaintiff's claim. The Plaintiff initially included FIRST AMERICAN TITLE INSURANCE COMPANY ( "FATICO" ) as one of the Defendants since they were the company that notified the Plaintiff of the Notices of Default ( "NOD" ): January 14, 2009, and March 29, 2011 ( Ex. # 1 , # 2 ) which the Plaintiff in their claim filed on May 7, 2014. These NODs were regarding the Plaintiff's residence located at 19270 N. Ibiza Lane, Maricopa, AZ 85138 ( "Home" ). It is the Defense counsel that stated that FATICO and FATSS are affiliates of FAFC. Under Court ORDER, the Plaintiff complied with the Defense counsel request and removed FATICO and FATSS from the Plaintiff's claim replacing these parties, FATICO and FATSS, with FAFC.

### FAFC FAILURE TO ISSUE A NOTICE OF DEFAULT TO THE PLAINTIFF

2.      FAFC failed to issue a Notice of Default ( "NOD" ) to the Plaintiff at least three months prior to the foreclosure sale which was executed on June 19, 2013 by FAFC and HSBC Bank USA.  The participants to this foreclosure sale were MERS who executed the Corporate Assignment of the Deed of Trust to HSBC Bank USA on September 23, 2011 ( Ex. # 3 ), and FACF who failed to notify of the Plaintiff of the foreclosure sale with the NOD three months before.   FAFC failed to:

    2.1 provide the Plaintiff with three-month notice which is required

    2.2 state that the Plaintiff is in default

    2.3 state the action that the Plaintiff must take to cure the default

    2.4 state a date, no less than 30 days, by which the default can be cured

    2.6 consequences for not fixing the default, foreclosure trustee sale

    2.6 state that the Plaintiff has the right to dispute the default.

All these requirements of the NOD were not done in the letter sent by FATSS dated February 11, 2013 ( Ex. # 4 );   nor did FAFC send any NOD to the Plaintiff as they were required.  Although this is a violation of State statutes requiring a NOD to be issued, the Plaintiff is not suing the Defendants in State Court, yet.  Nonetheless, FAFC has failed to provide a NOD to the Plaintiff. The Plaintiff is seeking actual damages which are $186,610.00, the cost of their Home, legal fees, and statutory damages of $2,000.00. The Plaintiff also seeks damages according to 12 USC § 5568 (a)(2)(B) (E)(H) ( refund of moneys or return of real property;   payment of damages or other monetary relief;   civil money penalties, as set forth more fully in subsection ).  As a debt collector, FATSS, an

3

affiliate of FAFC, and MERS, lied about the alleged debt owed by the Plaintiff under 15 U.S.C. § 1692e ( Ex. # 11 ).

**FAFC AND MERS COMMIT SLANDER OF TITLE AGAINST THE PLAINTIFF**

3.    The Plaintiff will show through the facts that: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.  The Defendant FAFC published a false statement with the Pinal County Recorder's office of the Trustee Sale ( Ex. # 5 ) on July 8, 2013, the sale having been executed on June 19, 2013.  That foreclosure sale was signed by Tammy Rossum, Supervisor at First American Title Insurance Co. on June 24, 2013.  As stated by the legal counsel for FAFC, First American Title Insurance Co. is an affiliate of FAFC.   In order for this Slander of Title to be executed, the Defendant MERS also had to execute a Corporate Assignment of the Deed of Trust assigning the Deed of Trust to HSBC Bank USA, NA, making it fraudulently possible for HSBC Bank US, NA to sell the Plaintiff's Home to Phoenix Holdings I LP.  Certified Forensic Loan Auditors, LLC ( "CFLA" ) has documented multiple  violations ( Ex # 6 , pg. 42 ):

> "The Deed of Trust has MIN number 1001355-1760303133-6 and is registered at the MERS SERVICER ID website https://www.mers-servicerid.org/sis/search showing Wells Fargo Bank, N.A. as Servicer and Nomura Credit Capital Inc. as stated investor.
> Although MERS records an assignment in the real property records, the promissory note which creates the legal obligation to repay the debt has not been transferred nor negotiated by MERS.
> MERS is never entitled to receive a borrower's monthly payments, nor is MERS ever entitled to receive the proceeds of a foreclosure or DEED OF TRUST sale.

4

> MERS is never the owner of the promissory note for which it seeks foreclosure.
> MERS has no legal or beneficial interest in the loan instrument underlying the security instrument for which it serves as "nominee".
> MERS has no legal or beneficial interest in the mortgage indebtedness underlying the security instrument for which it serves as "nominee".
> MERS has no interest at all in the promissory note evidencing the mortgage indebtedness.
> MERS is not a party to the alleged mortgage indebtedness underlying the security instrument for which it serves as "nominee".
> MERS has no financial or other interest in whether or not a mortgage loan is repaid."

Simply put, MERS had no legal authority and lied to execute the Corporate Assignment conveying the right to HSBC Bank USA, NA the Trustee status to sell the Plaintiff's Home to Phoenix Holdings, I, LP. In so doing, MERS, indirectly slandered the title and violated 15 U.S.C. § 1692e, by being a party that enabled the execution of the Trustee Sale of the Plaintiff's Home, and therefore, making it possible for HSBC Bank USA, NA to sell the Plaintiff's Home to Phoenix Holdings, I, LP, fraudulently. The Trustee Sale was then published to others by listing it on the web site of the Pinal County Recorder's Office. MERS, and FAFC maliciously did this knowing full well that they were committing the following violations ( "CFLA" ) ( Ex # 6,  pg. 45 ):

ξ In view of the foregoing, the Assignment of Deed of Trust executed after the Trust's Closing Date would be a void act for the reason that it violated the express terms of the Trust instrument.

It is not enough that the MERS has no legal right to make any assignments, but MERS compounds the fraud by having a non-employee sign the Corporate Assignment. Carla Naughton, "Assistant Secretary" of MERS is really not an employee of MERS ( Ex. # 7 ). Not only that, but Chet Sconyers, "Certified Officer" of MERS is really not an employee of MERS either ( Ex. # 8 ). Chet Sconyers signed the first NOD issued on January 8, 2009

( Ex. # 1 ).  The Premier Investigations Group Affidavit states ( Ex. # 9 ):

> "... It should be noted that Naughton and Sconyers have been parties to class action lawsuits concerning their participation in the "robo-signing" of financial and mortgage documents.   In fact, Ms. Naughton is described in the Fraud Digest, a legal periodical, as a fraudster, forger, civil thief, and accessory to grand larceny.  Furthermore, Naughton and Sconyers are reported to be the most prolific of the financial and mortgage documents 'robo-signers'..."

The Premier Investigations Group found no employment of Carla Naughton with MERS in their background investigations ( Ex. #  7  ).  Chet Sconyers is not an employee of MERS, but was an employee of FIRST AMERICAN TRUSTEE SERVICING SOLUTIONS, LLC ( affiliate of FAFC ) from Nov 9, 2013 though July 18, 2014  ( Ex. #  8  ).  Previously, Chet Sconyers was an employee of LOANSTAR MORTGAGEE SERVICES, L.L.C. as of  Sep 17, 1998  ( Ex. #  8  ).  Chet Sconyers and Carla Naughton have violated 15 U.S.C. § 1692(d)(e) representing themselves as employees of MERS.

As explained in the CFLA Audit Report, the <u>Note is no more</u> ( Ex. # 6, pg. 48-49 ):

> ## "Securitization Summary
>
> 1. Generally, if the Deed of Trust and the Note are not together with the same entity, there can be no legal enforcement of the Note. The Deed of Trust enforces the Note and provides the capability for the lender to foreclose on the property. Thus, if the Deed of Trust and the Note are separated, foreclosure legally cannot occur. The Note cannot be enforced by the Mortgage if each contains a different mortgagee/beneficiary; and, if the Mortgage is not itself a legally enforceable instrument, there can be no valid foreclosure on the homeowners' property.
> 2. No Entity can be a CREDITOR if they do not hold/own the asset in question (i.e. the NOTE and/or the property); a Mortgage Pass Through Trust (i.e. R.E.M.I.C., as defined in Title 26, Subtitle A, Chapter 1, Subchapter M, Part II §§ 850-862) cannot hold assets, for if they do, their tax exempt status is violated and the Trust itself is void ab initio.  This is an indication that either the Trust has either voided its intended Tax Free Status, or the asset is not in fact owned by it.
> 3. In the event that the loan was sold, pooled and turned into a security, such event would indicate that the alleged holder can no longer claim that it is a real party of interest, as the original lender has been paid in full.

6

4. Further said, once the Note was converted into a stock, or stock equivalent, that event would indicate that the Note is no longer a Note. If both the Note and the stock, or stock equivalent, exist at the same time, that is known as double dipping. Double dipping is a form of securities fraud.

5. Once a loan has been securitized, which the aforementioned loan may have been done many times, that event would indicate that the loan forever loses its security component (i.e., the Deed of Trust), and the right to foreclose through the Mortgage is forever lost.

6. The findings of this report indicate that the Promissory Note has been converted into a stock as a permanent fixture. As a stock it is governed as a stock under the rules and regulations of the SEC; hence, the requirement for the filings of the registration statin in ements, pooling and servicing agreements, form 424B-5, et.al. There is no evidence on Record to indicate that the Deed of Trust was ever transferred concurrently with the purported legal transfer of the Note, such that the Deed of Trust and Note has been irrevocably separated, thus making a nullity out of the purported security in a property, as claimed.

7. Careful review and examination reveals that this was a securitized loan. The Assignment of Mortgage pretended to be an A to D transaction when in fact the foreclosing party was hiding the A to B, B to C, and C to D facts of true sales, where A is the original lender, B the sponsor/seller, C the bankruptcy-remote depositor, and D, the issuing mortgage-backed securities trust. They also hid the legal SEC filings, governing the transaction according to our findings. But to be controlled by those SEC filings, the true original loan Note and Deed of Trust had to be provided by the Document Custodian certified to have been in possession of them by them on or about On or about January 31, 2007. Because it was not, the claim of ownership by the Trust cannot be substantiated and the loan servicing rights not established at law by agreement. Examiner supplies this report as written testimony and is available for oral testimony."

What is evident here is that there are frauds upon frauds committed by MERS, and FAFC in order to try to re-attach the Deed of Trust to the Note which is no longer in existence due to the securitization.  No Defendant in this claim, or anyone party of the REMIC Trusts has the legal right, or the legal standing to foreclose on the Plaintiff's Home.  Furthermore, MERS signed a CONSENT ORDER with the Office of the

7

Comptroller of the Currency ( "OCC" ) on April 13, 2011 agreeing to the CONSENT ORDER which states ( Ex. # 10, pg. 5 ):

> "...(4) In connection with services provided to Examined Members related to tracking, and registering residential mortgage loans and initiating foreclosures ("residential mortgage and foreclosure-related services"), MERS and MERSCORP:
> (a) have failed to exercise appropriate oversight, management supervision and corporate governance, and have failed to devote adequate financial, staffing, training, and legal resources to ensure proper administration and delivery of services to Examined Members; and
> (b) have failed to establish and maintain adequate internal controls, policies, and procedures, compliance risk management, and internal audit and reporting requirements with respect to the administration and delivery of services to Examined Members.
> (5) By reason of the conduct set forth above, MERS and MERSCORP engaged in unsafe or unsound practices that expose them and Examined Members to unacceptable operational, compliance, legal, and reputational risks..."

In spite of this CONSENT ORDER, MERS continued to commit fraud with the fraudulent signing of the Corp. Assignment signed on September 23, 2011 by Carla Naughton, "MERS Assistant Secretary" more than 5 months after the signing of the CONSENT ORDER. MERS and FAFC published this Slander of Title knowingly since they are both parties of the REMIC Trusts into which the two Notes were securitized. The Plaintiff as a consequence lost their Home valued at $186,610.00. The Plaintiff seeks punitive damages for this Slander of Title of $933,050.00 ( 5 x $186,610.00 ), statutory damages of $2,000.00.

## FORECLOSURE IS NOT SUFFICIENT TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

4. The Defendant FAFC states that the Plaintiff is not entitled to any damages due to emotional distress. As stated previously, the Plaintiff leaves it to this Honorable

Court to determine if the willful and fraudulent foreclosure of the Plaintiff's Home executed by MERS, and FAFC has not inflicted any emotional distress upon the Plaintiff.

### PLAINTIFF CANNOT QUIET TITLE TO THE PROPERTY

5.    The Defendant FAFC states that the Plaintiff cannot quiet title to the property. This statement is also false since fraud executed by MERS and FAFC as demonstrated above listed exhibits, do not convey the right to seize the Plaintiff's Home under any circumstance.  Although FAFC does not plead interest in the Plaintiff's Home, they actively participated in the Plaintiff's Home foreclosure by failing to provide a NOD, and by being a party to the fraudulent sale of the Plaintiff's Home executed on June 19, 2013 to Phoenix Holdings I , LP. Furthermore, the Notes have been paid in full as documented by the both auditors as part of the securitization; and, consequently the Notes are now stocks which are un-secured against any real asset.  All parties have been made whole:  the original lender, and the investors (profits in their stock buys, or tax credits). The Notes do not exist since the securitization occurred as early as 2007.

6.    The Plaintiff states that the motion submitted by FAFC to dismiss the Plaintiff's Court ORDERED amendment of their claim has no merit, and this Defendant, FAFC, has failed to provide any evidence why this Honorable Court should dismiss the Plaintiff's amended claim.  For these reasons and evidence listed above, the Plaintiff moves this Honorable Court to DENY FAFC's motion to dismiss the Plaintiff's amended claim.

7.    Lastly, the Plaintiff has intentionally omitted the listing of HSBC Bank USA, NA and Phoenix Holdings I, LP as parties of this claim pending the evidence provided by the private investigators DRAKE GROUP / PREMIER INVESTIGATIONS GROUP, and the in

depth audits executed by CFLA were made available recently.  The Plaintiff will file a claim against HSBC Bank USA, NA and Phoenix Holdings I, LP and their agent in the next few weeks.

Dated: 1/26/2015

George Diamond, Plaintiff in Pro Se

10

**CERTIFICATE OF SERVICE**

ORIGINAL of the foregoing is filed with the clerk of the Court IN THE UNITED STATES

DISTRICT COURT FOR THE DISTRICT OF ARIZONA, on January 26, 2015 via Certified mail.

The Plaintiff, a registered Whistleblower with the SEC and the IRS, is sending copies to:

**SEC Office of The Whistleblower**
100 F Street NE, 6 Mail Stop 5553
Washington, DC 20002-4224
(202) 551-4790
http://www.sec.gov

**INTERNAL REVENUE SERVICE**
**Whistleblower Office - ICE**
1973 N. Rulon White Blvd., MIS 4110
Ogden, UT 84201-1001
(202) 317-3500
http://www.irs.gov

**Office of the Comptroller of the Currency**
Customer Assistance Group
1301 McKinney Street, Suite 3450
Houston, TX 77010-9050
(800) 613-6743, (713) 336-4301, fax
www.occ.treas.gov

**RAMRAS LEGAL, PLC**
11811 N. Tatum Blvd., Suite 3031
Phoenix, AZ 85028-1621
(602) 734-0179
Representing First American Financial Corp., a Defendant

Dated: 1/26/2015

George Diamond, Plaintiff in Pro Se

11